UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CR00447 AGF |
| | ) | |
| SANDRA KAY BRYANT (f/k/a | ) | |
| SANDRA KAY KEMPER), | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

This matter is before the Court on Defendant's pretrial motions. All pretrial motions were referred to United States Magistrate Judge Frederick R. Buckles under 28 U.S.C. § 636(b). Defendant Sandra Kay Bryant (f/k/a Sandra Kay Kemper) was indicted by the grand jury on a two-count indictment. Count I charged Defendant and co-Defendant Steven Henry Kemper ("Kemper") with Aiding and Abetting the Use of Fire to Commit Mail Fraud, in violation of 18 U.S.C. § 844(h). Count II, which has been dismissed on motion of the United States, had charged Defendant Bryant with Use of Fire to Commit Mail Fraud, in violation of 18 U.S.C. § 844(h).

Defendant filed a motion to dismiss the indictment on limitations, jurisdictional and other grounds (Doc. No. 43), and a motion to suppress statements (Doc. No. 44). By stipulation of the parties, the motions were considered and decided upon the written Appendix (Doc. No. 55) and Joint Supplemental Appendix (Doc. No. 60) submitted by the parties, without testimony or oral argument. The Appendices consist of documents related to the investigation, deposition and pre-trial hearing testimony, and depositions and

trial testimony from a prior state court proceeding arising out of these same events.[1]  The Magistrate Judge issued a Memorandum, Report and Recommendation (R&R) denying the motion to dismiss (Doc. No. 79), and an R&R denying the motion to suppress statements (Doc. No. 80).   Defendant filed objections to the R&Rs.   For the reasons set forth below, Defendant's objections will be denied, and the R&Rs of the Magistrate Judge will be adopted and incorporated herein.

## MOTION TO DISMISS

Count I of the indictment alleges that Defendant and her then husband, Kemper, aided and abetted in a scheme to commit mail fraud that involved the intentional setting and use of fire to destroy several residences for the purpose of fraudulently obtaining insurance proceeds.   The indictment alleges that as part of the scheme, Kemper intentionally set fire to his mother's residence at 9780 Dennis Drive in St. Louis County in 1997, and that both Defendants benefitted from the insurance proceeds; and that both Defendants planned and set fire to Kemper's mother's subsequent residence at 2101 State Street in Alton, Illinois in 1999, and benefitted from the insurance proceeds.   These acts are alleged to have been part of an overall scheme by which both Defendants ultimately committed the offense charged in Count I of aiding and abetting the intentional use of fire at the residence at 6682 Champana Lane, in Florissant, Missouri, in 2001, for the purpose of committing mail fraud.   Defendant's son, Zachary, died in the fire.

---

[1] Defendant was charged in state court with arson, first-degree murder and three counts of first-degree assault.   After testimony regarding Defendant's statements to the police and related to the polygraph exam was presented, but prior to the conclusion of the evidence, the state judge declared a mistrial.

Defendant Bryant filed a Motion to Dismiss Alleged Unlawful Acts and Offenses Against Defendant Which Occurred Beyond the Statute of Limitations and Jurisdiction of the Court. (Doc. No. 43) In her motion, Defendant alleges that the Government's evidence of intent as to the fire at Dennis Drive shows that Kemper acted alone without notice to Bryant, and that the Government therefore cannot show Defendant had the requisite intent. As such, Defendant requests that the charge in Count I relating to mail fraud related to Dennis Drive should be dismissed. She further contends that the charges in Count I related to both the Dennis Drive and State Street fires should be dismissed because the mailings alleged to have occurred regarding those properties occurred outside the relevant statute of limitations period. Finally, she asserts that the Court lacks jurisdiction over the charge in Count I regarding State Street, as the property was located outside the Eastern District of Missouri. In his R&R, the Magistrate Judge recommended that each of these grounds be denied. Defendant filed a one-sentence objection, restating and reasserting all legal arguments set forth in her Motion to Dismiss (Doc. No. 90.), without any further specification or basis.

When a party objects to a Report and Recommendation concerning a motion to dismiss or to suppress in a criminal case, the court is required to "'make a de novo review determination of those portions of the record or specified proposed findings to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).

The Court conducted a *de novo* review of the Motion to Dismiss. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings

and correctly analyzed the issues. At the outset, the Court agrees with the Magistrate Judge that Defendant's contention that the government cannot prove intent with respect to this Defendant regarding the first fire is not properly raised at this stage. Where, as here, the indictment contains a facially sufficient allegation, Defendant cannot challenge the sufficiency of the Government's evidence pretrial.

The main fallacy in this and Defendant's other arguments, however, is that they fail to recognize that the events regarding the fires at Dennis Drive and State Street are simply background related to the overall scheme. As such, the facts related to Dennis Drive need not allege the elements of a separately charged offense. For similar reasons, Count I is not barred by limitations. The indictment alleges the use of the mails on or after November 16, 2001, and therefore within the limitations period. That acts related to the overall scheme, namely the fires at Dennis Drive and State Street, occurred outside the ten year period prior to the indictment does not change the analysis. Nor does the fact that one of the events related to the overall scheme occurred outside this district, namely the State Street fire, affect this Court's jurisdiction where, as here, the events charged related to Champana Lane occurred within this District.

Accordingly, the reasons set forth more fully in the R&R, the motion to dismiss shall be denied.

## **MOTION TO SUPPRESS**

Defendant also moved to suppress the statements she made on March 21, 2002, asserting that she was in custody at the time her statements were made; that she was not advised of her *Miranda* rights; that she did not voluntarily waive her *Miranda* rights; and

4

that her statements were not voluntary, but rather were the result of coercion, intimidation and deception. The Magistrate Judge reviewed the record submitted by the parties, and in a twenty-eight page R&R denied the motion. Defendant filed objections to the R&R (Doc. No. 89), and those objections were supplemented (Doc. No. 108) after defense counsel was granted leaved to withdraw and new counsel was appointed to represent Defendant. In the objections, Defendant, in the main, does not quarrel with the underlying facts recited in the R&R, but rather asserts that several facts material to the analysis were omitted, and contends that these facts warrant a conclusion that Defendant's statements were not voluntary.

The Court has also carefully reviewed the evidence in the Appendices, including a review of the video of the polygraph examination, and the testimony contained in the Supplemental Appendix. Based on the Court's *de novo* review of the evidence, the Court finds that the R&R (Doc. No. 80) correctly states the facts pertinent to Defendant's motion to suppress, and properly applies the law. Accordingly, the Court adopts and incorporates the Conclusions of Law and the detailed Findings of Fact in the R&R, (Doc. No. 80, at 2-15), and supplements those findings as follows:

The Court agrees with the Magistrate Judge that Defendant was not in custody during her initial interview with Detectives Webb and O'Neill. She voluntarily accompanied the officers to the station, and was not restrained while being transported or in the interview room in any way. The questioning at that time did not focus on any particular individual, and at the time, the officers did not believe Defendant was involved in setting the fire. The Opinion from the Missouri Supreme Court attached as an exhibit to

5

Defendant's objections does cause the Court to conclude otherwise. The state court began its opinion with the sentence: "About four months after her son was killed in a November 2001 fire at the family's home, Sandra Kemper was taken into police custody and interrogated." (Doc. 89, Ex. A.) The opinion of the state court is not binding on this Court. Moreover, the opening sentence is, at best, non-binding dicta. The issue of the voluntariness of Defendant's statements was not before the state court, and there is nothing in the court's opinion to suggest the state court was making any effort to determine whether any statements were custodial, and if so, when the need to issue *Miranda* warnings arose.

Defendant also asserts that the Defendant was not permitted to leave, but the Court finds no support for this assertion. The record reflects no request by Defendant to leave during this initial interview, nor any refusal to permit her to leave. To the contrary, Defendant twice requested to take a polygraph examination, which had the effect of extending the interaction. While Defendant did express concern to Detective McFarland about not being at work, she did not request to leave, and she agreed with to Detective McFarland's suggestion that he contact her employer. Again, she did not request to leave or to terminate the interview. As such, no *Miranda* warnings were required.

This conclusion does not change due to either Defendant's medication needs or her lack of sleep. While Defendant had apparently worked a double shift prior to coming to the station, she did not suggest she was too tired to continue, and was told she could terminate the interview at any time. Indeed, as stated above, the interview session was extended in length by the polygraph examination at Defendant's own request. In the polygraph video, which began several hours after the interviews started, Defendant

6

appeared alert and engaged. And while Defendant had not taken her Celexa that morning, which was first prescribed for her after her son's death, it appears she had missed only the single dose. Defendant has presented no evidence whatsoever to suggest delaying a single dose for half a day would have any deleterious impact on Defendant's state of mind. When questioned about any medications she took, she responded very matter-of-factly about the fact that she was taking Celexa, but had not taken her dose that morning, never suggesting by her statements or her manner that it had any impact on her emotional state that day.

The Court also agrees with the Magistrate Judge's careful and thorough analysis of the interview sessions overall, as well as the Magistrate Judge's conclusions that Defendant knowingly and voluntarily waived her rights, and that her statements to the officers were voluntary. Although the time period from beginning to end was lengthy, there were many breaks in the interview sessions, Defendant was offered cigarettes, snacks and drinks, and the opportunity to use the restroom, and was repeatedly advised of her rights and of her ability to terminate the interview.

The gravamen of Defendant's objections relate to the polygraph exam and, in particular, the criticism of that exam expressed by Defendant's polygraph expert at the state trial, David C. Raskin, Ph.D.[2] Defendant contends that the polygraph exam was conducted in an improper and coercive manner. Further, Defendant argues that (i) Det.

---

[2] Based on the failure of the Magistrate Judge specifically to reference Raskin's testimony and the Supplemental Appendix, Defendant makes the further assertion that the Magistrate Judge must not have reviewed the Supplemental Appendix. The Court finds no basis for such an assertion, and finds that the Magistrate Judge properly and reasonably addressed the actions at the polygraph exam as permissible interview tactics.

Schunzel misrepresented to Defendant that she had failed the polygraph exam when, in Raskin's opinion, Defendant had in fact passed the exam; (ii) that Det. Schunzel misrepresented the results, all as part of a ruse to extract a confession; and (iii) that this misrepresentation in the context of the entire questioning, including the polygraph exam and interviews by Schunzel, rendered Defendant's confessions involuntary. Based on the record, the Court disagrees.

First, the record does not support Defendant's assertion that Defendant "passed" the polygraph exam. To the contrary, even Defendant's own expert, Raskin, acknowledged based upon his own numerical scoring, that while the results to the relevant questions clearly were not "deceptive," nor did they qualify as truthful. He testified that Defendant's results were "in the direction of a truthful result, but not a strong truthful result." (Raskin Tr. at 1060.) And the computerized polyscore – yet another method of scoring – classified the responses as "inconclusive," though with a low percentage of being deceptive. *Id.* at 1086.

Nor does the Court find that Schunzel misrepresented the facts as part of a ruse to extract a confession. Schunzel was a trained and certified polygraph examiner, with many years of experience, who apparently used a process similar to a global scoring method. Schunzel visually examined Defendant's responses to the control questions and the relevant questions, and found that Defendant had a greater reaction to two of the relevant questions than to the control questions. (Schunzel Tr. at 11-2, 16.) He believed that other examiners would agree with his conclusion. *Id.* at 31. While Raskin was critical of Schunzel's methodology and the scoring method used by him, there is nothing to suggest

8

that Schunzel did not in fact believe that Defendant had answered relevant questions 5 and 10 untruthfully. And Schunzel's testimony that it was unnecessary to have anyone else examine the results in light of Defendant's confession does not suggest any impropriety. Assuming that one would routinely have another examiner review the results, it is both plausible and reasonable that no such steps would be taken following a subject's confession.

Based on a review of the evidence, including a careful review of the videotape of Schunzel's interaction with Defendant, the Court agrees with the findings of the Magistrate Judge that Schunzel's actions did not overbear Defendant's will. Defendant was calm and collected throughout the pre-test interview and the test itself, and her answers were controlled and responsive. Though expressly advised, orally and in writing, that she could end the interview at any time, she made no requests to terminate the interview. While Schunzel did engage in interview tactics during the post-test interview that were calculated to encourage Defendant to confess, the Magistrate Judge correctly found such tactics did not exceed what is permissible, and Defendant's will was not overborne.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (quoting *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001). Whether the confession is voluntary is judged by the totality of the circumstances, and courts must look

at both the "conduct of the officers and the characteristics of the accused."³ *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001).

Even if Schunzel conducted the polygraph poorly or improperly, or more as an interrogation, as Raskin suggests, that interview did not overbear Defendant's will or coerce her confession. Indeed, even if Schunzel misrepresented the results of the polygraph examination—and there is no evidence of any such knowing misrepresentation—this Court still would not find Defendant's statements to Schunzel to be involuntary. Misrepresenting the strength of the evidence against the accused is a factor impacting the voluntariness of a confession, but standing alone it will not render an otherwise voluntary confession inadmissible. *Johnson v. Pollard*, 559 F.3d 746, 754 (7th Cir. 2009). Even misrepresentations about the existence, results, or validity of polygraph evidence, without more, are insufficient to constitute coercion. *See, e.g.*, *Johnson*, 559 F.3d at 754-55 (lying about the outcome of accused's polygraph examination was insufficient to render his subsequent confession involuntary); *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003) (totality of the circumstances did not show coercion when questioning agent falsely told accused his polygraph results indicated deception); *Mays v. Clark*, No. CIV S-10-533 LKK CHS, 2012 WL 1037942, at *25 (E.D. Cal. Mar. 27, 2012) (administering a fake polygraph on the accused and confronting him with fabricated results were insufficient to render his subsequent confession involuntary);

---

3   Courts may consider factors including, but not limited to, the age and maturity of the accused, her intelligence, her level of education, her health, whether she was advised of her constitutional rights, the length of detention, the location of questioning, the repeated and prolonged nature of questioning, psychological coercion, and the use of physical punishment such as the deprivation of food or sleep. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *Hall v. Wolff*, 539 F.2d 1146, 1150-51 (8th Cir. 1976) (listing cases).

*Hernandez v. Cate*, No. CV 09–0973–SGL (RNB), 2009 WL 2431644, at *12 (C.D. Cal. Aug. 6, 2009) (affirming that a confession was voluntary even after police lied to the defendant that DNA evidence and a polygraph examination of the victim proved his guilt); *United States v. High Horse*, No. CR 07-50091-RHB, 2008 WL 2783197, at *2 (D.S.D. July 17, 2008) (holding that an untrue statement that defendant had failed a polygraph was insufficient to overbear his will). *But cf. Henry v. Dees*, 658 F.2d 406, 410-11 (5th Cir. 1981) (concluding that a defendant's confession was involuntary under the totality of the circumstances, including his subnormal intelligence, officers falsely asserting that he had failed a polygraph, and the lack of counsel at his interrogation).

Thus, the Court finds that the statements Defendant made to Schunzel were voluntary and not the result of any coercion or improper conduct. As such, there is no basis to suppress her subsequent confessions as the "fruit of the poisonous tree." Based on the totality of the circumstances, the Court finds that Defendant voluntarily and repeatedly waived her *Miranda* rights, that her will was not overborne at any stage of the interaction, and that her statements were voluntarily made. For these reasons, and the reasons more fully stated in the R&R, the Court finds that Defendant's motion to suppress should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [Doc. #79] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that the Report and Recommendation of United States Magistrate Judge [Doc. #80] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [Doc. #43] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements [Doc. #44] is **DENIED**.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of February, 2015.